IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV21-03-MU

| | |
|---|---|
| FRANCISCO CURBELO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| JIM PENDERGRAPH, et., al. ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Document No. 23), Plaintiff's "Motion in Opposition to Summary Judgment and Supporting Affidavit" (Document No. 28), "Pro Se Plaintiff's Response to Defendants Motion in Opposition to Opposition of Summary Judgment" (Document No. 30), and Defendants' Response to Plaintiff's Motion in Opposition (Document No. 29). For the reasons stated herein, Plaintiff's Complaint will be DISMISSED and Defendants' Motion for Summary Judgment will be GRANTED.

On January 20, 2004 Plaintiff filed a pro se Complaint pursuant to 42 U.S.C. § 1983 and on April 29, 2004 Plaintiff filed a Petition to Consolidate. By Order dated August 18, 2004, this Court dismissed Plaintiff's Complaint as unintelligible and denied Plaintiff's Petition to Consolidate which this Court treated as a Motion to Amend (Document No. 3.) Plaintiff appealed this Court's Order to the Fourth Circuit Court of Appeals. The Court of Appeals vacated this Court's Order and remanded for further proceedings. Pursuant to the Fourth Circuit's Order, this Court directed the Defendants to file an Answer (Document No.14.) Defendants filed their Answer on September 26, 2005 and filed a Motion for Summary Judgment on December 16, 2005.

1

This Court has spent considerable time trying to decipher what claims Plaintiff has alleged in his Complaint which is written in broken English. Petitioner's Complaint and Motion to Consolidate appear to include a variety of unrelated allegations including incidents allegedly occurring from 2001 until 2004 at the Mecklenburg County Jail where Plaintiff was a pretrial detainee. Plaintiff named Sheriff James Pendergraph, Elaine Gravitt, Norman Goode, Dennis Summers, Wade Skinner and Gregory Miller as defendants and has alleged what this Court very liberally construes as essentially six different claims consisting of subparts.[1] [2]

The first claim is against Defendant Pendergraph for denial of access to the courts by limitation of telephone use, limited hours for access to the law library, unavailability of Spanish language legal materials (Compl. ¶¶ 44-45), and excessive lockdowns (Compl ¶ 46); First Amendment violation of religious freedom for the Hispanic inmate population in 2002 (Compl. ¶ 47); deliberate indifference to Plaintiff's health and safety by failing to protect him from inmate attacks on September 30, 2001 (Compl. ¶¶ 57, 60) and October 10, 2001 (Compl. ¶¶ 58, 60), and detention officers' attack on December 8, 2003 (Compl. ¶¶ 51, 60); and improperly charging federal inmates ten dollars for sick calls (Pet. ¶ 1.)

Plaintiff's second claim is a deliberate indifference claim against Defendant Gravitt for the failure to properly provide medical care for him on August 12, 2000 (Compl. ¶¶ 11, 61, 65), August 27, 2000 (Compl. ¶¶ 13, 61, 65), September 2000 (Compl. ¶¶ 15, 61, 65), October 9, 2000 (Compl.

---

[1] Many of the allegations in Plaintiff's Complaint relate to medical claims which occurred prior to January 20, 2001 and as such are barred by the three year statute of limitations. National Advertising Company v. City of Raleigh, 947 F.2d 1158, 1161-1162 (4th Cir.1991).

[2] The Court notes that Plaintiff includes allegations against numerous people in the factual section of his Complaint that are not named defendants in this action and therefore are not before the Court.

¶¶ 18, 61, 65) April 5, 2001 (Compl. ¶¶ 24, 61, 65), and April 8, 2001 (Compl. ¶¶ 29, 61, 65).

Plaintiff's third claim is an excessive force claim against Defendants Summers, Goode, Robinson and Miller for allegedly assaulting him and destroying his books on December 8, 2003 (Compl. ¶¶ 51, 52, 63).

Plaintiff's fourth claim is a deliberate indifference claim against Defendants Summers, Goode, Robinson and Miller for failing to respond to his medical needs on December 8, 2003 (Compl. ¶¶ 54, 62).

Plaintiff's fifth claim is a conditions of confinement claim against Defendant Pendergraph alleging an overflowing toilet prior to January 27, 2001 (Compl. ¶ 21) and March 5, 2001 (Compl. ¶ 22), deprivation of use of a toilet on December 8, 2003 (Compl. ¶ 53), excessive lockdowns for talking (Compl. ¶ 42), failure to allow him to exercise (Compl. ¶ 66), failure to provide adequate bed space (Pet. ¶ 1) and poor jail food (Pet. ¶ 1).

Plaintiff's last claim is a retaliation claim against all named defendants for taking his legal mail after he filed his grievance for the alleged assault on December 8, 2003 (Compl. ¶ 68.)

## I. ANALYSIS

**A. First Claim**

**1. Denial of Access to the Court**

Plaintiff's claim for denial of access to the courts alleges that the jail's policy on telephone usage, limited hours to the law library, unavailability of Spanish legal material and excessive lockdowns deprived him of opportunities to contact his attorneys to discuss his legal problems. Moreover, in his Motion in Opposition, Plaintiff alleges for the first time that the jail's law library gives preference to a certain class of inmates and available two day for [sic] week and only received

five inmates together. (Motion at 26.)

Reasonable access by prisoners to both state and federal courts and to communication with attorneys is a guaranteed right. Ex parte Hull, 312 U.S. 547, 549 (1941). To that end, prison officials must provide prisoners with either law libraries or person trained in law. Bounds v. Smith, 430 U.S. 817, 828 (1977). However, in order to sustain an action under Bounds, a prisoner must show actual injury, i.e. that prisoners's efforts to pursue a legal claim were hindered. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). The inmate must "demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." Id. Here, Plaintiff has failed to demonstrate that he has suffered any cognizable injury. Plaintiff admits that the jail has a library, but is apparently unsatisfied with its hours and size (Compl. ¶ 45.) Plaintiff, however, has alleged "no specific problem he wished to research and . . . [n]o actual injury or specific harm which has resulted to him by his limited access to the jail library or its limited contents." Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987). In fact, since his incarceration, Plaintiff has filed several civil complaints[3], an appeal to the Fourth Circuit and numerous motions in his criminal case[4] as well as the instant case. Therefore, Plaintiff's claim of denial of access to the courts is dismissed.

### 2. First Amendment Claim

Plaintiff alleges that the jail violated the religious freedom of the Hispanic inmate population (Compl. ¶ 47.) This claim fails for several reasons.

First, the Prison Reform Litigation Act ("PLRA") provides, in part, that '[n]o federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

---

[3] See 3:00cv496, 3:00cv534 and 3:05cv235.

[4] See 3:99cr109.

emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. 1997e(e).

Next, Plaintiff fails to allege what restrictions the jail has imposed on his constitutional rights. For the first time in his motion in opposition, Plaintiff includes in his religious claim an allegation concerning Jehovah's Witnesses (motion at 24), but does not, as is required, indicate what restrictions were put on his first amendment rights.[5] Plaintiff also alleges that he was told to lockdown during a Bible session (Motion at 21) an officer glared at him and subsequently cut short a Bible session (Motion at 22-23) and limited him to thirty minute religious visits (Motion at 23.) The Court notes that Plaintiff did not claim that Defendants instituted a policy inhibiting his First Amendment rights, but only that he was disciplined during his religious services, which implicates not his First Amendment rights, but the efficient and orderly operation of the jail. See Hadi v. Horn, 830 F.2d 779, 788 (7th Cir. 1987) (cancellations of a prisoner's Muslim services when Muslim chaplain not available and when chapel was needed for recreational activities, did not violate prisoner's First Amendment rights because it furthered legitimate penalogical objectives.)

Furthermore, the "hispanic inmate population" also does not constitute a religion for first amendment purposes. See Morrison v. Garraghty, 239 F.3d 648, 658 (4th Cir. 2001) (to determine whether a professed faith is a religion for First Amendment purposes, courts are to consider whether the faith "occupies a place in the lives of its members 'parallel to that filled by the orthodox belief

---

[5] The Court will not consider this new claim raised for the first time in Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment. This Court's December 20, 2005, Order directing Plaintiff to file a response to Defendants' Motion for Summary Judgment clearly stated that Plaintiff should "base his reply and argument[s] solely on the matters set forth in the original Complaint and "Petitioner of Consolidate" and those set forth in Defendants' Motion. (Document No. 24.)

in God' in religions more widely accepted in the United States") (citations omitted).

Therefore, Plaintiff has failed to state a cognizable first amendment claim for relief and this claim is dismissed.

### 3. Deliberate Indifference to Attacks

Plaintiff alleges that Defendant Pendergraph was deliberately indifferent to his safety by failing to protect him from inmate attacks on September 30, 2001 and October 10, 2001 as well as detention officer attacks on December 8, 2003. To be sure, a prison has some duty to protect prisoners from violence. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a claim under § 1983 for deliberate indifference to Plaintiff's safety, Plaintiff must show that Sheriff Pendergraph knew of and disregarded an excessive risk to Plaintiff's health or safety, was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also drew that inference. Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff has advanced no evidence that Defendant Pendergraph or anyone else employed by the Sheriff's Office knew that any other defendants or William Bonnett (Compl. ¶ 57) or Roberto Zapata (Compl. ¶ 58), the inmates Plaintiff claims attacked him, were any risk to Plaintiff. Rich, 129 F.3d at 340. Therefore, Plaintiff' claim that Defendant Sheriff Pendergraph was deliberately indifferent to his safety is dismissed.

### 4. Charge for Medical Care

Plaintiff alleges that he was improperly charged ten dollars for sick calls. Plaintiff's claim is without merit. Pursuant to 18 U.S.C. § 4013(d)(1)(B), a state can collect fees from trust fund

accounts of federal prisoners for health care if the fee is authorized under state law and does not exceed the amount collected for state or local jails for the same services. According to Plaintiff's Complaint, the jail charged him ten dollars for sick calls. (Pet. ¶ 1.) Under state law, a jail can establish fees of not more than ten dollars for non-surgery medical care for prisoners. N.C.G.S. § 153A-225(a). Therefore, Plaintiff was not improperly charged for his medical care and this claim is dismissed.

**B. Second Claim - Medical Deliberate Indifference Claims Against Defendant Gravitt**

Plaintiff alleges that Defendant Gravitt failed to properly treat him on August 12, 2000, August 27, 2000, September 2000, October 9, 2000, April 5, 2001 and April 8, 2001.[6] Plaintiff filed his Complaint on January 29, 2004. Therefore, Plaintiff's claims based on the August 12, 2000, August 27, 2000, September 2000 and October 9, 2000 incidents are barred by the three year statute of limitations. National Advertising Company v. City of Raleigh, 947 F.2d 1158, 1161-1162 (4th Cir. 1991) (statute of limitations in North Carolina for section 1983 claims is three years).

The April 5, 2001 and the April 8, 2001 incidents are not time barred. A prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976).[7] In order to be deliberately indifferent, a defendant must know of and disregard an objectively serious condition,

---

[6] Plaintiff complains of a variety of medical issues including stomach pain, facial problems and vision problems.

[7] Estelle was decided under the Eighth Amendment since the plaintiff was a convicted prisoner. For purposes of a claimed denial of medical care, however, the same standard of "deliberate indifference" applies to a convicted prisoner or pretrial detainee. See Whisnant v. Yuam, 739 F.2d 160, 163 n.4 (4th Cir. 1984) (Estelle's "deliberate indifference" standard is applicable to pretrial detainees under the fourteenth amendment"). On April 5, 2001 and April 8, 2001, Plaintiff was a pretrial detainee.

7

medical need or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Disagreements over the quality and extent of medical care do not state a claim for relief for deliberate indifference. Estell, 492 U.S. 97 (1976). Following Estelle, the Fourth Circuit expressly held that "[d]isagreements between an inmate and a physician over the inmates's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1984). To be actionable, an inmate's treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Here Plaintiff's Complaint is so vague and lacking in fact that, even giving the Plaintiff the benefit of liberal pleadings given to pro se prisoners, this Court cannot find facts supporting deliberate indifference. At most, it appears to be either a lack of communication or a disagreement between Plaintiff and Defendant regarding his treatment, which does not state constitutional claim. Russell 58 F.2d at 319. Plaintiff admitted to receiving treatment from Dr. Perera (Compl. ¶ 24) prior to April 5, 2001 and receiving Motrin 80 mg. (Compl. ¶ 24). He also admitted seeing a doctor on April 8, 2001 (Compl. ¶ 28.) Plaintiff's disagreement over the extent of treatment provided does not rise to the level of a constitutional violation. Therefore, Plaintiff's claim is dismissed for failure to state a claim for relief

**C. Third Claim - Excessive Force**

Plaintiff claims that on December 8, 2003 Defendants Summers informed Plaintiff that he would have to sleep on the floor that night given the lack of cell space in the jail. Plaintiff alleges that Defendants Summers, Goode, Robinson and Miller then used excessive force to remove him

from his cell causing serious injuries, bruises, scratches and pain.  And at the same time, these same defendants destroyed some of Plaintiff's personal property.  (Compl. ¶¶ 51, 52, 63.)

In order to prevail on this claim, Plaintiff must show that the force used by Defendants Summers, Goode, Robinson and Miller amounted to punishment and was not merely "an incident of some other legitimate governmental purpose," Bell v. Wolfish, 441 U.S. 520, 538 (1979), and that the injury resulting from their actions was more than de minimis.  Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997).  Further, Plaintiff must show that defendants "inflicted unnecessary and wanton pain and suffering."  Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998), citing Whitley v. Albers, 475 U.S. 312, 320 (1986).  The "proper inquiry is whether the force was applied in a goof faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Taylor, 115 F.3d at 483 (citations omitted).

Here, there is no evidence that Defendants Summers, Goode, Robinson and Miller acted maliciously and sadistically in confining Plaintiff.  According to Defendant Goode's declaration, Plaintiff was placed on the ground after he repeatedly refused to comply with Defendant Summers' directive to exit the pod and attempted to interfere with Defendant Skinner's collection of Plaintiff's property.  (Goode declaration  ¶¶ 5-9, attached to Motion fro Summary Judgement as Exhibit 1).  Additionally, there is no evidence that Plaintiff's injuries were more than de minimis.  While he alleged that he suffered "bruises, scratches, and . . . excruciating pain" as a result of the altercation, the evidence presented by Plaintiff attached to his Complaint indicates that he received no medical

treatment at all for this incident.[8] [9] Furthermore, Defendant Goode's declaration confirms that Plaintiff did not appear injured nor did he request any medical treatment. (Goode declaration ¶¶ 10-11.)

Because Plaintiff cannot establish the necessary elements of an excessive force claim, this claim is dismissed for failure to state a claim. Moreover, it appears that defendants' actions would be protected by the doctrine of qualified immunity. Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991). "In dealing with . . . agitated detainees, prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit no matter which way they turn." Grayson v. Peed, 195 F.3d 692, 696 (4th Cir. 1999). Therefore, Plaintiff's excessive force claim is dismissed.

**D. Fourth Claim - Deliberate Indifference**

Plaintiff contends that Defendants Summers, Goode, Robinson and Miller were deliberately indifferent to his medical needs on December 8, 2003 after they physically removed him from the pod. In order to be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). As discussed in the previous section, there was no evidence that the Plaintiff's injury was severe or that he needed or even sought medical treatment. Therefore, this claim must be dismissed.

**E. Fifth Claim - Conditions of Confinement**

Plaintiff claims that his constitutional rights were violated by an overflowing toilet prior

---

[8] The use of force statements attached to Plaintiff's Complaint indicate that no injuries were noted on Plaintiff and he was not provided with any medical treatment.

[9] The Court notes that while Plaintiff attached various medical records to his Complaint and Petition to Consolidate, these records did not address the alleged injuries he received on December 8, 2003.

to January 27, 2001 (Compl. ¶ 22), deprivation of use of a toilet on December 8, 2003 (Compl. ¶ 53), excessive lockdowns for talking (Compl. ¶ 42), failure to allow him to exercise (Compl. ¶ 66), failure to provide adequate bed space (Pet. ¶ 1), and poor jail food (Pet. ¶ 1.)  For the first time in his opposition to the motion for summary judgment, Plaintiff claims that the toilet in cell no. 25 was not repaired for two months causing him to eat meals in "this deplorable condition" (Motion at 8-9), which resulted in various ailments (Motion at 13-14). [10]

Confinement conditions of pretrial detainees are to be evaluated under Due Process Clause, rather than under Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  In evaluating conditions of confinement claims, the proper inquiry is whether the conditions amount to punishment because due process proscribes punishment of detainee before proper adjudication of guilt.  Id.

If a suspect has been properly detained to ensure his presence at trial, the detention necessarily imposes restraints and disabilities on the detainee and not every restraint or

---

[10] Although the Court's December 20, 2005 Order directing the Plaintiff' to file a response to Defendants' Motion for Summary Judgment clearly stated that Plaintiff should "base his reply and argument[s] solely on the matters set forth in the original Complaint and "Petitioner of Consolidate" and those set forth in Defendants' Motion. (Document No. 24), in an abundance of caution, the Court quickly disposes of Plaintiff's new claim regarding the inoperable toilet in his cell.  Plaintiff alleges that the toilet in cell number 25 was not repaired for two months causing him to eat meals in "this deplorable condition" (Motion at 8-9), which resulted in various ailments.  In contrast to Plaintiff's unsupported, conclusory allegations, the evidence shows that Plaintiff was housed in cell HF-25 from January 9, 2001 until February 23, 2001.  On January 19, 2001, Keith and Keith Corrections, the jail's maintenance staff, were contacted to fix the toilet in cell HR-25 which was continually flushing.  The toilet was fixed the same day, but a solenoid had to be ordered which was installed March 8, 2001.  (See Ellenburg Declaration, Dino Declaration, attached to Defts' Response to Pl's Mot. In Opposition.)  The quick response by the jail in fixing the toilet in Plaintiff's cell combined with the short period of time that Plaintiff was in the cell, indicates that the inconvenience Plaintiff endured was not punishment in the constitutional sense.

inconvenience encountered during pretrial detention amounts to "punishment" in the constitutional sense.  Id. at 537.  Therefore, Plaintiff's claim concerning improper bed space and poor jail food should be dismissed.  See Bell, 441 U.S. at 541 (practice of double-bunking pretrial detainees does not violate inmates' due process rights); see also Antonelle v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1995) (plaintiff's allegation about inadequate bedding and being forced to sleep on the floor one night "does not pass muster under prevailing [constitutional] standards." Lunsford v. Bennett, 17 F.3d 1574, 1579-1580 (7th Cir. 1994) (plaintiff's complaints about poorly prepared food do not implicate Eighth Amendment).  Legitimate restraints may also stem from the need to manage the detention facility and maintain security.  Bell. at 540.  As a result, Plaintiff's claim that he was excessively locked-down for talking should be dismissed.

Moreover, the length of a detainee's stay in a facility may be considered in determining the constitutionality of conditions of confinement.  Id. at 542, see also, Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980) (court should consider "the totality of the circumstances" of plaintiff's confinement).  In Hutto v. Finney, 437 U.S. 678, 686-687 (1978) the Supreme Court held "[i]t is equally plain, however, that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."

Plaintiff alleges that he had an overflowing toilet for one day prior to January 27, 2001[11] and on March 5, 2001.  Plaintiff also alleges that he was denied the use of a toilet for one day on December 8, 2003.   Complaints of inadequate toilet facilities may state a constitutional

---

[11] The Court notes that this claim is barred by the statute of limitations as it arose more than three years prior to Plaintiff filing the Complaint in this action.

violation in certain situations. Sweet v. South Carolina Dept of Corrections, 529 F.2d 854, 860 n. 11 (4th Cir. 1975) (complaints about infrequent showers and inadequate toilet facilities); Williams v. Benjamin, 77 F.3d 756, 764-65 (4th Cir. 1996) (inmate deprived of toilet and shower for eight hours after being sprayed with mace). However, in the instant case, although Plaintiff was subject to a malfunctioning toilet for a day and denied the use of a toilet for one day. Plaintiff has failed to establish how Defendant's actions, causing Plaintiff to be in a cell with a malfunctioning toilet for a day and denying Plaintiff the use of a toilet for a day amounted to punishment under the Due Process Clause. The alleged condition, the malfunctioning toilet and denial of use of a toilet for a day was not a sufficient deprivation to constitute an unconstitutional condition especially in light of the limited time of the deprivation.. Therefore, Plaintiff's Complaint is dismissed for failure to state a claim.

Moreover, the Bell, court also made it clear that in conditions of confinement cases, there is a de minimus level of imposition with which the Constitution is not concerned. Bell, 441 U.S. at 539 n. 21. Plaintiff has not shown that he was harmed in any way by any of his condition of confinement claims. See Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (finding no Eighth Amendment violation where the plaintiff made no claim that he suffered any adverse effects from missing meals); Shakka v. Smith, 71 F.3d 162, 168 (4th Cir. 1995) (finding no Eighth Amendment violation where inmate made no showing that he suffered any physical or emotional injury, or was likely to have a significant risk of future serious harm, as a result of being denied a shower for three days). Plaintiff's allegations about his conditions of confinement, at most, amount to discomfort, and not a claim of constitutional magnitude, particularly in light of the limited duration of the conditions. Therefore, Plaintiff's conditions of confinement claims are

dismissed.

**F. Retaliation Claim**

Plaintiff claims that Defendants retaliated against him by taking his legal mail after he filed a grievance against them. As previously stated in section A(1) of this Order, reasonable access by prisoners to both state and federal courts and to communication with attorneys is a guaranteed right. Ex parte Hull, 312 U.S. 546, 549 (1941). However, a plaintiff claiming that his right of access to the court was violated must show an actual injury i.e. that the Plaintiff's efforts to pursue a legal claim were hindered. Lewis v. Casey, 518 U.S. 343, 351-51 (1996). Plaintiff has not shown any actual injury from Defendants alleged retaliation of taking his legal mail after he filed a grievance.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED.

**SO ORDERED.**

Signed: June 15, 2006

Graham C. Mullen
United States District Judge